PEOPLE v SHOVAN

Docket No. 52444. Submitted June 2, 1981, at Detroit.—Decided January 19, 1982.

Jay A. Shovan was convicted of larceny from a motor vehicle. Subsequently, he pled guilty to attempted breaking and entering pursuant to a plea-bargaining agreement including a sentence recommendation involving both convictions. Barry Circuit Court thereafter imposed consecutive sentences, Hudson E. Deming, J. The defendant appeals his plea-based conviction by leave granted on the ground that he should have been given the opportunity to withdraw his plea upon the trial court's failure to follow the prosecutor's sentence recommendation. *Held:*

The trial court was not obliged to give the defendant an opportunity to withdraw his plea. The record reveals that the trial court advised the defendant that it was not bound by the recommendation and that the defendant's plea was voluntarily and knowingly made.

Affirmed.

BRONSON, P.J., dissented. He would hold that the trial court was required to inform the defendant that it would not follow the prosecutor's recommendation and to give the defendant an opportunity to withdraw or affirm his plea. He would reverse and remand.

OPINION OF THE COURT

1. CRIMINAL LAW — GUILTY PLEAS — PLEA-BARGAINING AGREEMENTS — WITHDRAWAL OF PLEAS.

A criminal defendant should not be permitted to withdraw his guilty plea after sentencing on the ground that the trial court did not impose sentence in accordance with the prosecutor's recommendation pursuant to a plea-bargaining agreement

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 21 Am Jur 2d, Criminal § 504.

Right to withdraw guilty plea in state criminal proceeding where court refuses to grant concession contemplated by plea bargain. 66 ALR3d 902.

where, at the plea-taking proceeding, the trial court specifically informed the defendant that it was not bound by the prosecutor's recommendations and that the sentence imposed would be determined by the court and the defendant indicated that he understood (GCR 1963, 785.7).

DISSENT BY BRONSON, P.J.

2. CRIMINAL LAW — GUILTY PLEAS — PLEA-BARGAINING AGREEMENTS — WITHDRAWAL OF PLEAS.

*A trial court must inform a criminal defendant who has entered a guilty plea that it will not follow a prosecutor's sentence recommendation before imposing a sentence more severe than that which was recommended and must give the defendant an opportunity to withdraw or affirm his plea with full knowledge of the value of the recommendation; a mere cautionary instruction that it is not bound by the recommendation is insufficient to dispel the defendant's expectation that the agreement will be carried out (GCR 1963, 785.7).*

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Judy A. H. Hughes,* Prosecuting Attorney, and *Thomas C. Nelson,* Assistant Attorney General, for the people.

*David H. Tripp,* for defendant on appeal.

Before: BRONSON, P.J., and R. M. MAHER and F. X. O'BRIEN,* JJ.

F. X. O'BRIEN, J. On March 12, 1980, defendant was convicted by a jury of larceny from a motor vehicle. MCL 750.356a; MSA 28.588(1). On March 26, 1980, defendant appeared for preliminary examination on the charge of attempted breaking and entering of an occupied dwelling. MCL 750.92, 750.110; MSA 28.287, 28.305. At that time, the defendant waived examination in order to plead guilty to the attempted breaking and entering charge. A plea agreement was placed on the record

_____
* Circuit judge, sitting on the Court of Appeals by assignment.

which included the following two-part sentence recommendation to be made by the prosecutor:

"Also part of that agreement is that we are recommending one year in the county jail on the larceny from the motor vehicle.

* * *

"If the court follows our recommendation of one year, we will be free to recommend whatever we want concerning the attempted breaking and entering.

"If the court does not follow our recommendation, we will recommend that the second sentence, that sentence being the sentence coming from this attempted breaking and entering, would be served concurrently with the larceny from a motor vehicle sentence."

Two days later, defendant was arraigned on the attempted breaking and entering charge and pleaded guilty. He was sentenced for both convictions on April 25, 1980, and received from two to five years for larceny from a motor vehicle and from two to five years for attempted breaking and entering. The latter sentence was to be served consecutively. Defendant appeals his plea-based conviction.

This appeal raises a single issue: whether the defendant should have been given the opportunity to withdraw his plea of guilty when the trial court did not follow the prosecutor's sentence recommendation.

The issue has created two distinct viewpoints. The first requires that the matter be remanded and the defendant afforded the right to withdraw or affirm his plea when an opportunity to withdraw the plea is not provided prior to sentencing. *People v Briggs,* 94 Mich App 723; 290 NW2d 66 (1980), *lv gtd* 408 Mich 958 (1980), *People v Newsum,* 105 Mich App 755; 307 NW2d 412 (1981),

*People v Schirle,* 105 Mich App 381; 306 NW2d 520 (1981), *People v Bahlhorn,* 105 Mich App 118; 306 NW2d 416 (1981), *People v Black,* 103 Mich App 109; 302 NW2d 612 (1981). The second requires that the conviction be affirmed where the record reveals that the defendant was advised and understood that the trial court was not bound by the prosecutor's recommendation. *People v Lee Johnson,* 105 Mich App 614; 307 NW2d 385 (1981), *People v King,* 104 Mich App 459; 304 NW2d 605 (1981), *People v Yates,* 99 Mich App 396; 297 NW2d 680 (1980), *People v Armstrong,* 99 Mich App 137; 297 NW2d 637 (1980). On the facts of this case, we elect to follow the latter authorities and affirm the defendant's plea-based conviction.

The plea agreement is somewhat elaborate. It contains alternate recommendations regarding sentencing. These terms were placed on the record three times, once when the defendant waived examination and twice during the course of the plea-taking procedure.

At the outset of the plea-taking procedure, the prosecutor stated the agreement in full. The court then inquired of the defendant, "Could you tell me the plea agreement as you understand it." Defendant's initial recollection extended only to the prosecutor's promise to drop the supplemental information on the larceny conviction. After consultation with counsel, he also recalled the prosecutor's promise "to recommend one year in the county jail". At the trial court's request, defense counsel and the prosecutor recited the balance of the terms of the agreement. The defendant then acknowledged that this was the agreement as he understood it and that he had not been promised anything beyond the agreement. At the conclusion of the plea, the trial court stated:

"Let the record reflect that the court has not agreed upon the possibility of a plea or the possible sentence with the prosecutor, the defendant, or anyone acting in the interests of either."

Immediately thereafter, the court accepted the defendant's plea and set the matter for sentencing.

On the day of sentencing, the prosecutor's opening remarks included the following:

"The people have, pursuant to the plea bargain, recommended that this court sentence Mr. Shovan to a term of one year in the county jail in the matter involving the larceny from a motor vehicle, and the people, after that time, when it appeared that that would not be the sentence, did recommend to this court that the terms be served concurrently."

It is the frequent recitation and confirmation of the terms of the agreement, GCR 1963, 785.7(2)(b), the court's conscientious questioning of the defendant, GCR 1963, 785.7(1)-(3), and the court's clear disavowal of any obligation to accept the sentence recommendation, GCR 1963, 785.7(4)(b), that leads us to conclude that the defendant was not misled. Defendant's plea was voluntarily and knowingly made. Indeed, we are left with the impression that the defendant simply does not like the sentence he received.

Affirmed.

R. M. MAHER, J., concurred.

BRONSON, P.J. *(dissenting).* The issue in this case is whether a trial court must inform a defendant who has pled guilty that it will not follow the prosecution's sentence recommendation before imposing a sentence more severe than that which was recommended. Upon review of every published

opinion to date in Michigan addressing this issue, I remain convinced that the trial court must so inform the defendant to give him an opportunity to withdraw or affirm his guilty plea with full knowledge of the value of the recommendation. See *People v Black,* 103 Mich App 109; 302 NW2d 612 (1981), *People v Schirle,* 105 Mich App 381, 384-385; 306 NW2d 520 (1981).

While I disagree with many of the Michigan Supreme Court's requirements and decisions involving the taking of pleas and appeals from plea-based convictions (which I am nonetheless bound to follow), the problem posed here does not involve a mere technical failure to comply with some aspect of GCR 1963, 785.7. The questions we are confronted with are to what extent a defendant has a reasonable expectation of receiving the sentence recommended by the prosecution and under what circumstances we will permit a defendant's expectations based upon a sentence recommendation to be rebuffed without giving defendant an opportunity to withdraw his plea. In my opinion, the prosecution's agreement to recommend a particular sentence does imbue the defendant with certain sentencing expectations. These expectations are often, if not usually, reinforced by defense counsel.

The underlying premise of *People v Armstrong,* 99 Mich App 137; 297 NW2d 637 (1980), and its progeny is that once the trial court informs the defendant that it is not bound by the sentence recommendation, defendant has no reasonable expectation of receiving the sentence recommended. I disagree with this conclusion. At least many trial courts in our state follow prosecution sentence recommendations as a matter of course. Where these sentence recommendations are not generally

followed, there are nonetheless substantial pressures on defense attorneys to cast the value of the recommendation in a most positive light. It has been noted by numerous scholars that underfunding of the courts and the organizational needs of a criminal court system tends to encourage the abandonment of ideological commitments to the accused client in the service of bureaucratic and organizational objectives. Trials delay dispositions in a system in which speedy resolution of cases is constitutionally and statutorily mandated. Most members of the criminal bar have close and continuing relationships with prosecutors, as well as lines of communications with the judges, themselves. The relationships between judges and adversary counsel rest on professional and organizational needs. Consequently, it becomes extremely difficult for defense attorneys to reconcile their roles as advocates of their clients with the demands imposed by what is really their organization. Chief among these demands is the need to process large numbers of cases. See, among others, on this phenomenon: Blumberg, *The Practice of Law As a Confidence Game,* 1 Law & Soc'y R 15 (June, 1967), Sudnow, *Normal Crimes: Sociological Features of the Penal Code in a Public Defender Office,* 12 Soc Prob 255 (1965), Skolnick, *Social Control in the Adversary System,* 11 J of Conflict Resolution 52 (March, 1967). For a less scholarly, but in some ways more enlightening account of the effects the organizational demands of a criminal court system has on defense attorneys, see Harris, *Annals of Law, In Criminal Court—II,* The New Yorker (April 21, 1973), p 44. Blumberg's article, cited above, noted that in some 60% of the cases studied the plea of guilty was first suggested by defense counsel and also that in some 60% of the cases the accused indicated that defense counsel

was the most influential in convincing him to plead guilty. There are many reasons, then, to believe that a defendant's attorney is likely to depict the rosiest potential outcome following a guilty plea. Indeed, this is practically demanded by our system of criminal justice. If a criminal defendant cannot rely on his attorney's advice and assertions about sentencing consequences, the attorney-client relationship constitutes its own breed of adversary relationship shrouded in mistrust.

Given the preceding, I am constrained to agree with the majority in *People v Bahlhorn,* 105 Mich App 118; 306 NW2d 416 (1981), that a cautionary instruction to the effect that the court is not bound by the prosecutor's recommendation is insufficient to dispel a defendant's expectation that the agreement will be carried out. The bottom line is that it is impossible for us to know what defense counsel has told his client about the value of the recommendation. We know that sometimes counsel explicitly promise what they cannot guarantee and, more often, implied promises are made by counsel. This is not to impugn the integrity of defense attorneys generally. If an attorney accurately tells his client that in his experience 95% of the time a particular trial court, although not bound by the prosecutor's recommendation,. nonetheless follows it, the attorney has acted honestly and ethically. At the same time, I cannot reach any conclusion other than that the defendant in such circumstances has a reasonable expectation of receiving the sentence recommended by the prosecution.

Other approaches to this problem besides those adopted in *Armstrong, supra,* and *Black, supra,* are, of course, possible. One solution to the problem would be to order remands for evidentiary hearings every time a claim is made by a defen-

dant that his attorney or the prosecutor promised that a particular sentence would result from a prosecution sentence recommendation. Compare, *Schirle, supra.* While this approach would probably ultimately result in fewer judicially required guilty-plea withdrawals than under *Black* because at least some defendants would not really seriously anticipate obtaining the recommended sentence, it has major drawbacks. It would require endless remands which seriously deplete judicial resources. *Black* adopts a bright line rule. If the trial court is willing to accept the guilty plea with the prosecution's sentence recommendation, it must either impose the recommended sentence or give defendant an opportunity to withdraw his plea. Other solutions can be worked out on a county level. For instance, trial courts could refuse to accept guilty pleas where a defendant asserts that the prosecutor's sentence recommendation is a factor in his decision to plead guilty. Alternatively individual prosecuting attorneys'. offices could decline to agree to recommend sentences in exchange for guilty pleas in those counties where the issue under consideration here has posed a problem.

I fail to see any substantial merit in the *Armstrong* holding in respect to this issue. Its chief virtue is that it disposes of more cases by guilty pleas than might otherwise have been.[1] In my opinion, however, *"Armstrong* guilty pleas" are

---

[1] If the *Armstrong* view ultimately prevails, I would expect this to lessen the total number of cases disposed of by guilty pleas. First, competent counsel would no longer be inclined to urge guilty pleas for a mere sentence recommendation in borderline cases. Second, defense attorneys would have a much more difficult time convincing their clients to plead guilty for sentence recommendations when it began to get around that these were really not beneficial. Of course, if *Armstrong* does prevail, we will continue to have defendants convicted by guilty pleas which they would not have tendered but for the valueless sentence recommendation.

presumptively suspect and cannot be deemed as voluntary, knowing, and intelligent since the tendered plea is made, from the defendant's viewpoint, in exchange for a mitigation of the sentence. See *Black, supra.*[2]

I recognize, that the great majority of defendants who plead guilty are guilty. Nonetheless, where a prosecutor's recommended sentence has induced the defendant to give up substantial constitutional rights, he should get the recommended sentence unless he is told that he will not and has an opportunity to withdraw his plea. The simple beauty of the rule I advocate is that it very clearly separates those defendants who would plead guilty in any case from those who really were induced to plead guilty because of the prosecutor's sentence recommendation. I might also add that it is the latter group of defendants in which the few innocent accused willing to plea guilty are most likely to be found.[3]

---

[2] In *Black,* I relied in part on the ABA Standards, Pleas of Guilty, § 3.3 (Approved Draft, 1968) for support for my holding. It is true that the ABA Standards were revised in 1979 and § 3.3(b) of the new ABA Standards on Pleas of Guilty would now be satisfied by the *Armstrong* approach. In *People v King,* 104 Mich App 459; 304 NW2d 605 (1981), one panel of this Court implied that reliance on the old standards was invalid. I disagree. The ABA Standards are not the law in this state, but merely persuasive authority. I am convinced that the 1968 version of the ABA Standards on Guilty Pleas, § 3.3, represents the better approach. I also note that the *King* majority strains to find *People v Briggs,* 94 Mich App 723; 290 NW2d 66 (1980), *lv gtd* 408 Mich 958 (1980), the lead decision representing my position on this problem, decided correctly under the new ABA Standards. In my opinion, a fair reading of the new ABA Standards on Pleas of Guilty would require the conclusion that under their mandate *Briggs* is as incorrectly decided as the decisions citing *Briggs* as authority.

[3] Ironically, the *Armstrong* rule will probably work its worst injustices among those accused of petty offenses for the first time. It is this group which will most easily get the prosecution to recommend probation in exchange for a guilty plea, and it is this group which otherwise would be most inclined to fight the charges if incarceration was thought to be a possibility. It is also among this group in which innocent accuseds would be most likely to plead guilty or nolo contendere, anticipating sure probation or deferred sentencing, in-

In the instant case, the prosecution made alternative recommendations. In exchange for defendant's plea of guilty to larceny from a motor vehicle it was recommended that he receive one year in the county jail or, if the trial court could not in good conscience carry out this recommendation, it was recommended in the alternative that his sentence be served concurrently with another sentence to be imposed for attempted breaking and entering. In my opinion, had the trial court incorporated either of the recommended sentencing alternatives into the punishment actually imposed, defendant's expectations would have been fulfilled. However, neither alternative was adopted by the court. Thus, I believe this case should be remanded to allow the defendant to withdraw his guilty plea if he so desires.

The majority opinion concludes, "Indeed, we are left with the impression that defendant simply does not like the sentence he received." This may well be true, but it is ultimately not a persuasive argument. In every case where a sentence is imposed which is harsher than that recommended by the prosecutor, the defendant will not like the sentence imposed. My fundamental disagreement on this issue with the *Armstrong* Court and the majority here is that under the rule they advocate it is impossible to identify those defendants, whether guilty or innocent, who would have required the state to meet its burden of proving them guilty beyond a reasonable doubt but for their reasonable expectations of receiving the sentence recommended by the prosecutor.

I would remand to the trial court and give defendant the opportunity to withdraw his plea of guilty.

stead of going to trial and taking the risk of incarceration following an adverse verdict.